**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACOB LAZCANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17-cv-02969 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacob Lazcano was riding his bicycle down a Chicago street on July 3, 2014 when he collided with a United States Postal Service ("USPS") truck. Lazcano subsequently sued Defendant United States of America, alleging that the accident occurred because its employee, the driver of the USPS truck, acted negligently. The parties tried Lazcano's claim in a bench trial. For the reasons set forth below, the Court now returns its verdict in favor of the United States.

**TRIAL EVIDENCE**

This Court held a three-day bench trial on Lazcano's negligence claim. The testimony and evidence presented at trial is summarized as follows.

    **I.    Lazcano's Testimony**

        **A.    Lazcano's Background**

Lazcano took the stand at trial and testified that he learned how to ride a bicycle as a child—when he was approximately nine or ten years old. At the time of the accident, Lazcano was seventeen years old. Because Lazcano did not have a car, he relied on his bike for transportation and rode it four to five times a week, weather permitting. Lazcano has a fixed-gear bike, which does not have brakes; instead, the speed of the pedals corresponds with the speed of

the wheels, and the rider uses the strength of his legs to decrease the speed of pedals and come to a stop.[1]

### B. The Accident

On the afternoon of July 3, 2014, Lazcano made plans to go to a friend's house to play video games. The weather was sunny; a "typical summer day." Lazcano's friend's house is located at the intersection of Pulaski Road and Lawrence Avenue in Chicago. Prior to this occasion, Lazcano had ridden his bike to this friend's house approximately four times per week that summer and was well-acquainted with the route. Lazcano rode his fixed-gear bike and did not put on a helmet. En route to his friend's house, Lazcano rode his bike along Kinzie Street, which has a designated bike lane. He then turned onto Lawrence and rode west. Lawrence is a two-way street, running east and west. The street includes a driving lane, a lane for parked cars, and a bike lane in between. Lazcano estimated that the bike lane is approximately four feet wide. Lazcano intended to turn off Lawrence onto Harding Avenue, one street before Pulaski.

Around 3:00 p.m., Lazcano approached the intersection of Lawrence and Kimball Avenue Traffic was heavy, and Lazcano observed that the traffic light at the intersection was about to turn red, so he slowed down. Lazcano estimates that he was riding at approximately 12 to 15 miles per hour in the bike lane, and he did not veer from the lane at any point. Meanwhile, the USPS truck, which was in the driving lane, approached the intersection and came to a stop. Lazcano intended to ride past the USPS truck and got within six inches of the back of the truck. But suddenly, the truck's rear right tire struck his left handlebar. Lazcano's bike was crushed under the tire, and the force of the impact threw him off the bike "to the side and forward." Lazcano landed on the

---

[1] During cross-examination, counsel for the United States asked Lazcano whether he was aware that riding a bike without a hand or foot brake violates both Illinois state law and Chicago municipal law. Lazcano answered that he did not.

ground on his buttocks and lower back. Lazcano attempted to stand up slowly, while passersby who had witnessed the collision told him to sit back down and informed him that they would call an ambulance.

Eventually, police officers and an ambulance arrived at the scene. When confronted with the ambulance report of the accident at trial, Lazcano acknowledged that it indicated that he "denie[d] pain" in his neck, upper back, and lower back. (Trial Pl.'s Ex. 1.) However, Lazcano testified that both his neck and back hurt on the way to the hospital. Lazcano went to the hospital emergency room ("ER"). Approximately an hour later, Lazcano was discharged from the ER and went home.

### C. Aftermath

The following day, Lazcano recalled feeling sore, especially in the region of his back. Over the next few days, he avoided most activities, as he no longer had his bike and still felt a great deal of pain. Approximately one week later, on July 11, 2014, Lazcano sought medical treatment and underwent approximately six to eight weeks of physical therapy. Initially, Lazcano told the physical therapist that he did not have neck and back pain, but he later expressed feeling pain in those areas. The physical therapist instructed Lazcano to perform certain exercises that would ease his back pain and applied tape and electronic massage therapy to Lazcano's back. According to Lazcano, the physical therapy was helpful but only temporarily eased the pain. Lazcano admitted to skipping three physical therapy appointments.

In early 2015, Lazcano sought treatment from Dr. Intesar Hussain. Dr. Hussain recommended an MRI exam and a series of steroid injections into Lazcano's spine. In March 2015, after three injection appointments, Lazcano informed Dr. Hussain that the injections only provided temporary relief. Dr. Hussain replied that Lazcano should give it some time.

Then, in June 2015, Lazcano was involved in another accident while riding his bike to work. This time, Lazcano was struck by a truck that made a turn without properly signaling. Again, Lazcano was riding a fixed-gear bike with no brake and without wearing a helmet. He suffered injuries to his neck and shoulder but not his back. Lazcano was again transported to the ER in an ambulance. After this second accident, Lazcano sought and received treatment for his neck and shoulder pain. Lazcano later sued the truck driver and obtained a favorable settlement.

Meanwhile, Lazcano continued undergoing medical treatment for his back. Eventually, Lazcano sought treatment from Dr. Ronald Michael instead of Dr. Hussain. At trial, Lazcano could not recall who referred him to Dr. Michael, but he previously testified at his deposition that it was his attorneys at the Vrdolyak law firm, who represent him in this action. Dr. Michael took x-rays and conducted an additional MRI exam. He then prescribed more injections for Lazcano, which lasted another eight to nine months. Eventually, in late 2017, Lazcano stopped seeing Dr. Michael, as the pain in his back was largely resolved at that point. But Lazcano testified that before the pain abated, he had to refrain from standing for long periods of time or else he would experience back pain. For a while, he avoided riding his bike or lifting items heavier than 50 pounds, as those activities exacerbated his symptoms. On cross-examination, however, Lazcano admitted that he worked as a mover before and after the July 2014 accident, and his injuries did not prevent him from continuing to do so. Indeed, Lazcano admitted at trial that he felt "great."

**II.     Rishko's Testimony**

Lazcano also called the USPS driver, Volodymyr Rishko, as a witness at trial.

Rishko testified that he drives a tractor trailer truck for USPS, which has a single axle and is 30 feet long and 10 feet wide. He has been a USPS driver since 2000, although he has been a commercial truck driver in the United States since 1993. During his employment with USPS, he

has been involved in four accidents with other individuals, including one other accident with a man riding his bike. Because of this history—and his concerns about false accusations and frivolous lawsuits—Rishko purchased and mounted a camera on the dashboard of his USPS truck (the "dash camera"). (Trial Def.'s Exs. 2, 3.)

According to Rishko, on July 3, 2014, he was driving his USPS truck westbound on Lawrence, along a route that he takes on a weekly basis. The route requires him to drive along Lawrence repeatedly for short distances—turning off of and then back onto Lawrence. At the time of the accident, Rishko was at a spot on the route that required him to drive straight along Lawrence for approximately 1.5 miles. Rishko knew that there was a bike lane on Lawrence to the right of the driving lane but it was a *shared* lane, not designated expressly and solely for bikes. As he drove along Lawrence, Rishko periodically checked his mirrors for bikes—for example, he recalls seeing a bike pass his truck shortly before the accident—but his focus was mostly directed towards the road in front of him. He was listening to the radio while driving, although he claims he was not paying attention to it. Rishko also testified that he was not driving faster than the speed limit.

As Rishko approached the intersection of Lawrence and Kimball, the traffic light turned from green to yellow to red. Rishko was looking straight ahead at the intersection and did not check his mirrors while he was braking. As he came to a stop, Rishko heard a sound that he analogized to "when [a] tractor is crossing [a] crack on the road." He then noticed a man sitting at a nearby bus stop pointing at his truck. Concerned that something had happened, Rishko parked the truck and got out to investigate. As he began to walk towards the back of the truck, Rishko observed a police car across the street turn on its lights. Rishko stopped walking and waited for the police car to approach, then told the police officer that he had a dash camera in his truck. The

5

police officer asked to see the dash camera video footage, and Rishko complied. The police officer then instructed Rishko to move the truck, as it was impeding traffic. Before moving his truck, Rishko took several photos of the back of the truck to show its location in the driving lane. (Trial Def. Ex. 2.) He eventually submitted the photos to his employer, the USPS, as documentation of the accident. By Rishko's estimate, the truck was stopped approximately 40 feet away from the point of impact with Lazcano's bike.

At trial, the United States introduced both the video footage from the dash camera and the photos taken by Rishko. (Def.'s Ex. 3.) The dash camera video depicts Rishko driving straight along Lawrence. At one point, the bike he described in his testimony passes the truck in the bike lane on the right. The video also depicts a parking lane with numerous parked cars to the right of the driving lane. As Rishko approaches the intersection of Kimball and Lawrence, the traffic light changes, and the silver car directly in front of Rishko's truck displays its brake lights. Rishko then brakes and comes to a complete stop behind the silver car. At no point does the video show Rishko making any turns or swerves. The photos taken by Rishko similarly portray the tires of his USPS truck facing directly forward. Rishko acknowledged on cross-examination that the front and back tires of the truck did not align perfectly with the lane markings on the pavement, but he explained that, in his opinion, the lane markings are slightly crooked because the road incorporates a left-turn lane at the intersection.

### III. Barrette's Expert Testimony

The United States called Roger Barrette, an accident reconstructionist and former police officer, as an expert witness. Barrette testified that he reviewed the related police reports; transcripts from the depositions of Lazcano, Rishko, two other USPS employees, and Lazcano's friend Omar Espinoza; the dash camera video footage; and Rishko's photos. Armed with this

6

information, Barrette personally visited the site of the accident on August 5, 2018, approximately four years later. After comparing the dash camera video footage and photos to the pavement, Barrette concluded that the gouges, marks, and cracks in the pavement were the same; in other words, the road had not been repaved or otherwise altered since the accident occurred. Barrette then used survey equipment and took measurements of the gouges and marks to gather additional information for his analysis.

      Barrette confirmed Rishko's statement that the bike lane on Lawrence is, in fact, a shared bike lane. He specifically testified that tire tracks and other marks on the pavement illustrate that vehicles regularly drive in the bike lane as well as the driving lane. He also explained that the crooked lane marking described by Rishko reflects where the lane splits into a left-turn lane and a straight-ahead lane. All traffic—including bikes—are required to move slightly to the right to accommodate the left-turn lane. Barrette then reconstructed the accident and determined the following sequence of events that led to the collision: The USPS truck was traveling westbound on Lawrence at approximately 14 miles per hour. As it approached the area where the lane diverges, the left side of the truck was 1.9 feet away from the dashed center line between eastbound and westbound traffic, and the right side of the truck was 3.9 feet away from the solid white line on the right side of the lane. The truck then moved slightly to the right to stay out of the left turn lane and continue straight through the intersection. At that time, Lazcano approached from the rear and moved into the 3.9 feet between the right side of the truck and the solid white line on the pavement. Lazcano was moving faster than the truck and tried to navigate between the truck and a limousine that was parked on the side of the road. As he passed the leading axle of the USPS truck tractor trailer—the second axle from the rear of the trailer—his handlebars made

contact with the tire, causing him to lose control of his bike. Lazcano then flipped over the handlebars of the bike onto the pavement.

### IV. Dr. Deutsch's Expert Testimony

The United States also called as an expert witness Dr. Harel Deutsch, a board-certified neurosurgeon with specialized knowledge about pathology of the spine. Dr. Deutsch personally performs approximately 400 spinal surgeries every year. Dr. Deutsch reviewed Lazcano's multiple MRI exam results, his hospital and physical therapy records, the accident report, various other medical records, Lazcano's deposition transcript, and Dr. Michael's deposition transcript. After his review, Dr. Deutsch disputed the conclusion of Lazcano's treating physicians that Lazcano may have suffered a disc herniation or other similar trauma. Dr. Deutsch testified that, in his expert opinion, Lazcano at most experienced a cervical or lumbar strain from the accident, which he characterized as minor injuries. As a result, the vast majority of Lazcano's physical therapy treatments and all the spinal injections were medically unnecessary and even inappropriate. Dr. Deutsch criticized other aspects of Dr. Michael's treatment of Lazcano's injuries as well.[2] For example, Dr. Deutsch pointed out that the spinal injections were performed without the use of a fluoroscopy, a technique that provides continuous x-ray images throughout a procedure. In Dr. Deutsch's opinion, the standard of care requires use of a fluoroscopy when administering spinal injections to ensure that the steroid is injected into the proper location. In addition, Dr. Deutsch pointed out that the spinal injections were administered at the facet joint, which would not be the proper site even if Lazcano did have a disc herniation. Dr. Deutsch further

---

[2] As explained in the Court's August 20, 2019 Order (Dkt. No. 52), Lazcano indicated in his pretrial submission that he intended to call Dr. Michael, one of the physicians who treated Lazcano's injuries after the accident, to testify at trial as both a fact and expert witness. However, even though the Court granted two continuances, Dr. Michael still failed to appear. Ultimately, Dr. Michael did not testify at the trial.

opined that Lazcano does not have an increased risk of injury or physical harm as a result of the accident—for example, he is not predisposed to premature aging or future degeneration.

## DISCUSSION

The Court has considered the evidence presented, including the testimony of the above witnesses and the exhibits submitted by the parties. Based upon that evidence, the Court enters the following conclusions of law and findings of fact pursuant to Federal Rule of Civil Procedure 52.

### I. Conclusions of Law

In the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) & 2671–80, "Congress waived the United States's sovereign immunity for suits brought by persons injured by the negligence of federal employees acting within the scope of their employment." *Furry v. United States*, 712 F.3d 988, 992 (7th Cir. 2013). The United States does not dispute that Rishko is a federal employee who, at all relevant times, was acting within the scope of his employment with the USPS. The "law of the place where the act or omission occurred" governs FTCA claims, 28 U.S.C. § 1346(b)(1), so the Court applies Illinois law here. *See Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001). To succeed on a negligence claim in Illinois, a plaintiff must prove by a preponderance of the evidence "that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Furry*, 712 F.3d at 992 (citation and internal quotation marks omitted). If the defendant acted negligently, then the Court must also consider whether the plaintiff acted negligently, because Illinois limits a plaintiff's recovery in the event that he is contributorily negligent. 735 ILCS 5/2-1116(c). If a plaintiff is more than 50 percent at fault for the accident, then he cannot recover anything, even if the defendant in fact acted negligently. *Id.*; *see also Knights v. United States*, 203 F. Supp. 3d 916, 927 (N.D. Ill. 2016).

The United States does not dispute that its employee, Rishko, had "a duty to exercise reasonable care in the operation of his vehicle and to have his vehicle under such control as would enable him to avoid collision with other vehicles or pedestrians." *Furry*, 712 F.3d at 992 (citation, internal quotation marks, and alterations omitted). Accordingly, the issues presented for resolution at the trial were breach, proximate cause, contributory negligence, and damages.

## II. Findings of Fact

The Court finds that Lazcano failed to present credible evidence to show that Rishko breached his duty of care by driving negligently at the time of the accident. First, the Court cannot conclude that Rishko exceeded the speed limit. Rishko testified that as he approached the intersection, the traffic light changed from green to yellow to red, and he accordingly applied the brakes and came to a stop. The Court finds Risko's testimony at the trial to be credible, especially considering that it was confirmed by the dash camera video footage, which shows the truck slowing down at a comparable rate to the silver car in front of it. Barrette similarly testified that his reconstruction of the accident indicated the USPS truck was moving at a mere 14 miles per hour when it collided with Lazcano.

Lazcano contends that the handlebars of his bike came into contact with the USPS truck because the truck swerved into the bike lane where he was riding. However, Lazcano's claim is unsupported by the evidence. Lazcano does not offer any eyewitness testimony that the truck swerved, and he himself testified that he did not see the postal truck move towards him before or during the impact. *See, e.g.*, *Furry*, 712 F.3d at 993 (affirming judgment against plaintiffs who failed to offer eyewitness testimony regarding the cause of the accident and instead argued that the only "commonsense" explanation for the collision was that defendant hit them). On the other hand, Rishko testified that he did not make any turns or swerves. He explained that his route

10

required him to drive straight through the intersection, and thus he had no reason to deviate from his lane. Rishko's testimony is again corroborated by the video footage, which shows the truck steadily traveling forward, facing the same direction before and after the accident. The footage does not depict the truck taking any sharp turns or swerves. Lazcano claims that Rishko's photos of the USPS truck's position after the accident show that the truck must have swerved to the right, as its tires are not precisely lined up with the lane markings on the pavement. However, as Barrette's reconstruction revealed, this configuration is easily explained by the emergence of a left turn lane at the intersection. Naturally, to make room for that left turn lane, the driving lane veers slightly to the right. In view of the evidence, the Court finds that Rishko adjusted the course of the USPS truck to stay in the driving lane, rather than swerving into the bike lane.

     Lazcano also contends that Rishko acted carelessly by failing to check his mirrors as he approached the intersection to see if any bikers were in the bike lane. Rishko admitted at trial that he took this route on a regular basis and knew that bikers often used the bike lane on Lawrence. But Rishko explained that he did not check his mirrors immediately prior to the accident because his attention was focused on the road ahead. Considering the approaching intersection and red traffic light, the Court finds Rishko's behavior reasonable. The Court acknowledges that if Rishko intended to swerve into the bike lane or otherwise change the course of the USPS truck, his duty of care would have required him to check his mirrors to avoid colliding with other vehicles or bikers. But as explained above, the USPS truck did not move out of the driving lane or take any turns. Thus, the Court cannot conclude that his failure to look for bikers in that moment constituted a breach of his duty.

     Lazcano further argues that Rishko was distracted by the radio while driving. Lazcano's argument might be stronger if Rishko were listening to an exciting radio program or blasting loud

11

music. But the footage from the dash cam illustrates that he was listening to a simple radio talk show at an appropriate volume. The Court declines to find that such conduct breaches the duty of reasonable care imposed on all drivers. Ultimately, Lazcano has offered several possible explanations for the collision but has not met his burden of proof.

The Court's conclusion that Rishko was not negligent effectively puts Lazcano's negligence claim to rest. Still, the Court briefly addresses the United States's argument that Lazcano's recovery should be reduced or barred due to contributory fault. "A plaintiff is guilty of contributory negligence when [he] fails to exercise a degree of care which a reasonably prudent person would have used for [his] own safety under like conditions, and that failure is the proximate cause of [his] injury." *Savage v. Martin*, 628 N.E.2d 606, 614 (Ill. App. Ct. 1993). In Illinois, a plaintiff cannot recover on a negligence claim if his own negligence was more than 50% of the proximate cause of the injury for which he seeks to recover. *See* 735 ILCS 5/2-1116(c). And if a plaintiff's negligence contributed to the injury but was less than 50% of the proximate cause, his recovery is reduced in proportionate to his contributory fault. *See id.* The United States argues that Lazcano failed to act with reasonable care by not wearing a helmet, riding a fixed-gear bike that has no brakes, and failing to maintain sufficient distance from the USPS truck.

The United States contends that both state and municipal laws require Lazcano to wear a helmet, ride a bike with proper brakes, and maintain a safe distance from other vehicles on the road, and his violation of these laws serves as evidence of his general carelessness. It is correct that violation of "a statute designed for the protection of human life and property . . . is *prima facie* evidence of negligence." *Lindquist v. Chi. & Nw. Transp. Co.*, 722 N.E.2d 270, 276 (Ill. App. Ct. 1999). However, any such negligence stemming from Lazcano's lack of proper brakes was not the proximate cause of his injuries. *See id.* at 283 (finding "negligence on [plaintiff's] part

12

in *causing* the subject collision" (emphasis added)). While the Court agrees that a bicyclist acting with reasonable care should wear a helmet, Lazcano's back, not his head, was injured. A helmet is unlikely to have prevented his injuries. Similarly, hand or foot brakes would have enabled Lazcano to come to a stop more quickly, but there is no indication in the record that his improved ability to stop would have prevented the accident. Lazcano testified that he was not moving at a high speed leading up to the intersection, as he had decreased the speed of his bike in response to the red traffic light up ahead. Further, Lazcano explained that he was trying to ride past the truck when his handlebar came into contact with its tire. As Lazcano was not trying to stop before he reached the truck, the Court does not see how his ability to brake more effectively would have prevented the accident.

Lazcano admitted that he came within six inches of the USPS truck. But viewed in context, this distance is not necessarily unreasonable. For example, Lazcano testified that the bike lane is only four feet wide. Barrette testified that the USPS truck was less than two feet away from the center line dividing eastbound and westbound traffic. Considering these short distances, the Court understands why Lazcano would be only six inches away from a vehicle on the road. Moreover, both Lazcano and the USPS truck had slowed down considerably in approaching the intersection, intending to come to a complete stop. Given their low speeds, the short distance between them is not clearly unreasonable. Therefore, the evidence does not establish that Lazcano was contributorily negligent.[3]

Finally, the Court briefly summarizes the parties' arguments as to damages. The United States argues that Lazcano cannot recover the costs of his medical treatment because the vast

---

[3] The Court's conclusion that neither Rishko nor Lazcano were negligent reflects the belief that a collision can occur even when both parties act with reasonable care. The mere fact of a collision is insufficient evidence of negligence. *See, e.g.*, *Furry*, 712 F.3d at 993.

majority of it was medically unnecessary. The Court need not reach a conclusion as to this issue, however, because none of Lazcano's treating physicians testified at the trial. Thus, Lazcano failed to authenticate properly his medical bills and other documentation of his treatment, which forces the Court rely solely on his testimony of pain and suffering. Lazcano requested a judgment in his favor of $50,000.[4] Lazcano claims that he experienced pain and suffering and the loss of normal life. Specifically, he felt back pain for years and had to refrain from normal activity such as riding his bike or lifting weights heavier than 50 pounds. In response, the United States argues that Lazcano is not entitled to any such damages because his statements and conduct after his accident demonstrate that he was not actually in pain. For example, the ambulance report states that Lazcano denied feeling pain in his upper back, lower back, and neck. Also, Lazcano was discharged from the ER after only an hour. Moreover, in 2014, Lazcano was employed by a moving company as a mover, and his injury did not limit his ability to continue working there. But ultimately, because the Court has concluded that Rishko did not act negligently, the Court need not determine the extent of Lazcano's pain and suffering.

---

[4] The $50,000 request was based on $3,505 in medical bills from the ambulance service and ER after the accident, $20,000 for pain and suffering, and $26,495 for loss of normal life.

## CONCLUSION

Because Lazcano has not presented sufficient evidence to support a finding by a preponderance of the evidence that Rishko was driving negligently at the time of the accident, the Court finds that he has failed to meet his burden of proof. Judgment will accordingly be entered in favor of the United States.

ENTERED:

Dated: March 10, 2020

Andrea R. Wood
United States District Judge